UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


KAREN M. BOYD STARKS,           )
                                )
            Plaintiff,          )
                                )
     v.                         )       NO. 3:05-0442
                                )       JUDGE ECHOLS
WEST MEADE PLACE, LLP.          )
                                )
            Defendant.          )


## MEMORANDUM

Pending before the Court is Defendant West Meade Place LLP's ("West Meade's") Motion for Summary Judgment (Docket Entry No. 26). Plaintiff has filed responses in opposition to the motion (Docket Entry Nos. 33[1] and 36-37) and Defendant has filed a reply (Docket Entry No. 35).

## I. BACKGROUND

Plaintiff, acting pro se, filed this civil action in forma pauperis under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., alleging she suffered gender discrimination[2] while working for West Meade, a nursing home facility located in

---

[1] Plaintiff's filing is styled as a motion to strike and for other relief. By separate Order, that part of the filing that seeks to strike the motion for summary judgment and requests other relief has been denied. (Docket Entry No. 38). To the extent that the filing also contains part of Plaintiff's response in opposition to Defendant's motion for summary judgment, the Court has reviewed it as such.

[2] Although Plaintiff also placed a checkmark next to "national origin" on her form Complaint, she specifically states in the body of her Complaint that her claim is limited to gender discrimination. (Docket Entry No. 1, Complaint at 3). Plaintiff confirmed in her deposition that her claim is limited to gender discrimination. (Pf. Depo. at 59). In any event, there is no evidence which would even remotely suggest "national origin" is at issue in this case.

Nashville, Tennessee.  Originally, the suit was filed against two employees of West Meade, neither of whom was Plaintiff's employer under Title VII.  Pursuant to the Court's Order of June 15, 2005 (Docket Entry No. 4), Plaintiff amended her complaint to name West Meade as a Defendant, and the individual Defendants were dismissed (Docket Entry No. 18).

This case was referred to the Magistrate Judge pursuant to an Order of Reference (Docket Entry No. 2).  However, that Order of Reference will be withdrawn so that the Court can rule on the pending Motion for Summary Judgment.

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff worked for West Meade as a certified nurse technician ("CNT") from September 2003, to July 15, 2004.  She alleges she suffered gender discrimination and was constructively discharged because West Meade failed to take appropriate action in response to her complaints about a male co-worker at West Meade named Johnnie Coburn ("Coburn").

Plaintiff and Coburn, who also worked as a CNT, had a personal relationship which predated Plaintiff's employment at West Meade. In her Complaint, Plaintiff alleges that, in May of 2004, Coburn harassed and intimidated her, by such things as following her into a patient's room and threatening her.  She asserts that she tendered a written resignation letter, dated May 28, 2004, giving two weeks notice of her resignation and stating that she was resigning for personal reasons effective June 11, 2004.  Her

2

resignation letter did not mention any problems she was having with Coburn.

On May 31, 2004, after her termination letter, Plaintiff alleges she first complained about the actions of Coburn when she spoke with West Meade's Director of Nurses, Connie Velazquez ("Velazquez"), by telephone. At the request of Velazquez, Plaintiff met with her the next day. Plaintiff alleges Velazquez informed her that she (Velazquez) had spoken to Coburn and directed him to not have any kind of contact with Plaintiff and also advised Plaintiff that Coburn and Plaintiff would be working on separate floors at West Meade with Coburn staying on the second floor and Plaintiff staying on the third floor.

Plaintiff alleges that, as a result of her conversations with Velazquez, she orally rescinded her resignation letter and continued to work at West Meade. According to Plaintiff, however, the situation with Coburn did not improve after her meeting with Velazquez. She alleges that on June 4, 2004, Coburn came to the floor where she was working despite Velazquez's reassurances that Plaintiff and Coburn would be working on separate floors and that nothing was done to reprimand Coburn.

Plaintiff alleges that, on the evening of July 1, 2004, Coburn came to the third floor where she was working and threatened her with physical harm. Plaintiff told the "charge nurse" what had occurred, and the charge nurse informed Velazquez about the situation. That day, Plaintiff was called to the office of Administrator, James Wright ("Wright"), at which time Plaintiff

3

alleges she told Wright of the threats made by Coburn and that he was harassing her, both at and away from West Meade. She alleges that Wright's only response was to ask her if she and Coburn could be friends. Plaintiff contends neither Wright nor anyone at West Meade took any real action to rectify the situation with Coburn, and that he continued to come to the floor on which she worked. Plaintiff also asserts that she was given the hardest work assignments and was watched more closely than Coburn after complaining about him.

Plaintiff states that, on July 12, 2004, she obtained an order of protection against Coburn. On July 15, 2004, she was called to Wright's office where she met with Wright and Velazquez. She alleges that both expressed their displeasure with the order of protection, that they were unconcerned, and that the only solution offered was for her to change her work hours to the 3:00-11:00 p.m. shift because Coburn needed to remain on the day shift. Plaintiff asserts that she could not change her work hours and felt so intimidated and mentally beaten down by the occurrences of the last two months that she did not return to work after July 15, 2004. She contends that it would have been pointless to make further complaints about Coburn because Wright and Velazquez had shown that they would not take any action against him and because two other female employees who had previously complained about him were fired.

### III. <u>SUMMARY JUDGMENT MOTION AND DEFENDANT'S RESPONSE</u>

Defendant asserts summary judgment should be granted because Plaintiff cannot establish the elements necessary to state a claim

Case 3:05-cv-00442   Document 39   Filed 09/28/06   Page 4 of 17 PageID #: 393

under Title VII, whether under a theory of co-worker harassment, disparate treatment, or constructive discharge. Defendant contends that the evidence shows that Plaintiff complained for the first time of harassment by Coburn on July 1, 2004, and that it responded in good faith to her complaint by meeting with both her and Coburn and attempting to ensure that the two did not come into contact in the work place. Defendant asserts that, prior to July 1, 2004, it was only aware that Plaintiff had been involved in a verbal alteration with another female employee about Coburn in late May 2004, and that Plaintiff wanted to avoid Coburn for personal reasons.

Defendant contends that, when Wright and Velazquez became aware of the order of protection Plaintiff had obtained, they again met with Plaintiff on July 15, 2004, and prompt, reasonable steps were offered to help Plaintiff avoid contact with Coburn at West Meade by offering to change her work hours so that she was not working at the same time as Coburn. Defendant asserts that Plaintiff twice declined at these meetings to file a formal harassment complaint against Coburn under West Meade's Harassment and Hostile Work Environment Policy and took no independent steps to file any formal harassment complaint against Coburn.

Defendant argues that Plaintiff has no evidence that it took any kind of adverse action against her because of her gender or that she was treated differently than similarly situated male employees at West Meade. They deny the allegation that two other female employees were terminated for complaining about Coburn or

5

that Plaintiff was given more difficult working assignments.
Defendant argues that the evidence, even when viewed in the light
most favorable to Plaintiff, does not support a claim of
constructive discharge. Defendant supports its motion with the
deposition of Plaintiff (Docket Entry No. 31), and with the
affidavits of James Wright (Docket Entry No. 29) and Connie
Velazquez (Docket Entry No. 30).

In response, Plaintiff asserts that genuine issues of material
fact exist and that her claim should be resolved by a jury. She
contends that Defendant's motion is based upon hearsay evidence and
takes issue with several of the factual statements made in the
supporting affidavits of Wright and Velazquez. Although Plaintiff
submits a response in opposition to Defendant's statement of
undisputed material facts and sets out specific objections to the
affidavits of Wright and Velazquez, <u>see</u> Docket Entry No. 33,
Plaintiff does not submit any affidavits or other evidence in
support of her response in opposition to the motion for summary
judgment.

## IV. <u>STANDARD OF REVIEW</u>

A party may obtain summary judgment if the evidence
establishes there are not any genuine issues of material fact for
trial and the moving party is entitled to judgment as a matter of
law. <u>See</u> Fed.R.Civ.P. 56; <u>Covington v. Knox County School Sys.</u>,
205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the
initial burden of satisfying the Court that the standards of Rule
56 have been met. <u>See</u> <u>Martin v. Kelley</u>, 803 F.2d 236, 239 n.4 (6th

6

Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. See Fed.R.Civ.P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## V. LEGAL ANALYSIS

### A. Plaintiff's Failure to Support Her Response

Plaintiff has failed to support her opposition to the Motion for Summary Judgment as required by the Federal Rules of Civil

7

Procedure. Specifically, Rule 56(e) of the Federal Rules of Civil

Procedure provides:

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

The Court recognizes that Plaintiff is proceeding <u>pro</u> <u>se</u>. Nevertheless, as the party opposing a properly supported motion for summary judgment, she was required to set forth admissible evidence that supports her case and raises a genuine issue for trial. <u>See</u>, <u>McKinnie v. Roadway Express, Inc.</u>, 341 F.3d 554, 558 (6 [th] Cir. 2003)(while <u>pro</u> <u>se</u> pleadings are to be construed liberally, <u>pro</u> <u>se</u> litigants "are not entitled to special treatment, including assistance in regards to responding to dispositive motions").

By Order entered March 2, 2006 (Docket Entry No. 32), the Court specifically advised Plaintiff of her obligation in regard to responding to the Motion for Summary Judgment and set out various types of evidence upon which she could rely in supporting her response in opposition. Plaintiff has simply failed to satisfy this obligation.

Plaintiff's response in opposition to the motion for summary judgment is not supported by any actual evidence. Plaintiff has not submitted her own affidavit, the affidavit of any other person who has knowledge of the facts of this case, or any other type of documentary evidence. Although Plaintiff filed unverified

8

rebuttals to Defendant's Local Rule 8(b)(7) Statement of Undisputed Facts (Docket Entry No. 28) and to the affidavits of Wright and Velazquez (Docket Entry Nos. 29-30), she has not supported her rebuttals with any evidence or with citation to any evidence that is already in the record. (See Docket Entry No. 33). To the extent that Plaintiff relies on her own unsworn statements to rebut the motion for summary judgment, such statements do not meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure and as such are to be disregarded in ruling on a motion for summary judgment. See Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962, 968-969 (6th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970)). The Court also notes that the Complaint filed by Plaintiff is unverified.

Summary judgment is warranted in favor of Defendant for these reasons alone. Although the Court is required to construe Plaintiff's pro se filings liberally, the Court cannot make Plaintiff's response in opposition to summary judgment for her. Further, the Court is not required to scour the record to determine whether genuine issues of material fact exist. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the trial court may rely on the "facts presented and designated by the moving party." Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404 (6th Cir. 1992). Defendant has set forth evidence showing that no violation of Title VII occurred. Plaintiff's unsupported allegations in her Complaint and other filings are simply not sufficient to overcome the summary judgment motion and

9

supporting documentation.  See Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992).

Because Plaintiff has not shown through evidence that a genuine issue of material fact for trial exists on her claims, Defendant is entitled to judgment as a matter of law.  See Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).

**B. <u>Lack of Genuine Issue of Material Fact</u>**

Even if the Court considers the substance of Plaintiff's claims,[3] Defendant is entitled to summary judgment.  This is because Plaintiff cannot show that a genuine issue of material fact exists with respect to any of her claims.

**1.  Hostile Work Environment Claim[4]**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  See  42  U.S.C.  §  2000e-2(a)(1).  "The  phrase  'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of

---

[3]As indicated in the previous section, Plaintiff has not filed a response in accordance with Rule 56.  In an effort to glean whatever *evidentiary* support exists for Plaintiff's position, the Court has read Plaintiff's deposition testimony and will consider that testimony in analyzing the substance of Plaintiffs' claims.

[4]In her response to Defendant's Statement of Undisputed Material Facts, Plaintiff repeatedly states that she did not file "a Title VII claim of sexual harassment" but instead filed a claim of "gender discrimination."  (Docket Entry No. 33).  Nevertheless, a fair reading of her claims, as well as her deposition testimony, indicates that Plaintiff is complaining that she was subjected to workplace harassment because of her sex.

10

men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

In order to prove a claim of co-worker workplace harassment under Title VII, Plaintiff must show: 1) she was a member of a protected class; 2) she was subjected to unwelcome harassment by a co-worker; 3) the harassment was based on her protected status; 4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and 5) the employer knew or should have known of the harassment and failed to take prompt and appropriate corrective action. See Fenton v. HiSAN, Inc., 174 F.3d 827, 829-30 (6th Cir. 1999); Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 872-73 (6th Cir. 1997).

In this case, Plaintiff's deposition testimony arguably supports the first four elements of a hostile work environment claim – she is female, she claims harassment at the hands of co-worker Coburn, the harassment was as a result of her being female, and the harassment so interfered with her work performance that she was forced to quit. Her claim falters, however, on the fifth element – her employer's knowledge and actions.

"Employer liability for co-worker harassment is based directly on the employer's conduct." Hafford v. Seidner, 183 F.3d 506, 513 (6th Cir. 1999). "An employer is liable 'if it knew or should have known of the charged sexual harassment and failed to implement

11

prompt and appropriate corrective action.'" Id. (citation
omitted).

"In determining whether a response was 'prompt and
appropriate,' negligence in fashioning a remedy is not sufficient
for the employer to incur liability." Nievaard v. City of Ann
Arbor, 124 Fed. Appx. 948, 954 (6 th Cir. 2005)(citation omitted).
Instead,

> when the allegations of sexual harassment involve a
> coworker and the employer has fashioned a response, the
> employer will only be liable "if its response manifests
> indifference or unreasonableness in light of the facts
> the employer knew or should have known. The act of
> discrimination by the employer in such a case is not the
> harassment, but rather the inappropriate response to the
> charges of harassment." Thus, an employer who implements
> a remedy "can be liable for sex discrimination in
> violation of Title VII only if that remedy exhibits such
> indifference as to indicate an attitude of permissiveness
> that amounts to discrimination."

McCombs v. Meijer, Inc., 395 F.3d 346, 353 (6th Cir.2005)(quoting
Blankenship, 123 F.3d at 873) (internal citations omitted).

In this case, Plaintiff's own testimony belies any assertion
that her employer had an attitude of permissiveness in relation to
harassment. Defendant responded to the complaints about Coburn and
those responses were not unreasonable.

Plaintiff presented Defendant with complaints of verbal
threats and harassment by a co-worker, some of which took place
outside of work and over which Defendant had no control. The
events in the workplace occurred over a matter of mere weeks.
There is no evidence of any type of physical harassment. Further,
there is no evidence before the Court that the alleged verbal
harassment was a daily occurrence, and Plaintiff's own testimony is

12

that she made only two complaints to her supervisors about Coburn before the day she quit.

Defendant did not ignore Plaintiff's complaints, but instead took action as soon as it learned of a problem. According to Plaintiff's own testimony, Defendant met with her, listened to her complaints, and offered to adjust Plaintiff's working schedule to minimize any contact between Plaintiff and Coburn. Defendant's uncontroverted evidence also shows that Wright met with Coburn about the matter and instructed him to avoid contact with Plaintiff.

In her deposition, Plaintiff asserted in conclusory fashion that Defendant's actions were not effective and that Coburn continued in generally harassing conduct. Even if true, this does not overcome the fact that on each of the occasions on which it was presented with a complaint, Defendant took action to address Plaintiff's concern.

The question is not whether other remedial actions should have been taken or whether the actions taken by the Defendant were those desired by the Plaintiff. Instead, the question is whether the Defendant encouraged harassment in the workplace or evidenced culpable indifference to it. Bell v. Chesapeake & Ohio Railway, 929 F.2d 220, 225 (6th Cir. 1991). In this case, the evidence which has been presented shows that Defendant was not indifferent to Plaintiff's complaints and that it took appropriate action in light of what it knew at the time. See Fenton, 174 F.3d at 831 (holding that speaking with alleged harasser and telling him to

13

cease conduct or face discipline constituted reasonable, good faith response).[5]

Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## 2. Disparate Treatment Claim

Plaintiff does not clearly set out the basis for her disparate treatment claim. She has not established by competent evidence any actual manner in which she was (1) treated differently than a similarly situated male employee at West Meade because of sex or (2) subjected to an adverse employment action, both of which are essential to a disparate treatment claim. Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 729 (6th Cir. 1999).

Insofar as Plaintiff attempts to make a disparate treatment claim based upon the one-time occurrence where her pay was improperly reduced, the undisputed evidence shows that the pay reduction was a clerical error and was resolved without detriment to Plaintiff after Defendant was made aware of the mistake. (Pf. Depo. 66-68). Further, insofar as Plaintiff claims she was given the hardest working assignments, she has offered no evidentiary support for the unadorned claim, let alone support which would show

---

[5] Plaintiff also contends that two other female employees were terminated for complaining about Coburn. This contention is apparently offered in support of her claim that Defendant's remedial actions against Coburn were essentially meaningless. See Plaintiff's Deposition at 57-65. Plaintiff, however, has not offered any type of admissible evidence supporting her conjecture about why these employees were terminated from employment at West Meade or rebutting Defendant's evidence that valid reasons existed for the termination of those employees. (See Affidavit of Velazquez (Docket Entry No. 30) at ¶¶ 36-37).

14

that any "harder" work she was given was because of her gender or that comparable employees of the opposite sex were excepted from performing that work.  (Id. at 68-69).

Plaintiff also makes a generalized claim that Coburn was treated better than her.  However, Plaintiff's subjective belief that Defendant favored Mr. Coburn simply is not buttressed by any evidence or by any evidence from which it could reasonably be inferred that any difference in treatment relating to Coburn was because he is a male and Plaintiff is a female.  See Watson v. Cleveland, 2006 WL 2571948 at *8 (6th Cir. 2006); Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 (6th Cir.1986) (both holding that an inference of discrimination cannot be supported merely by the plaintiff's personal beliefs and speculation that the defendant impermissibly discriminated).

Plaintiff's failure to proffer any evidence that she was treated differently because of her sex mandates that Defendant's properly supported Motion for Summary Judgment on this claim be granted.

## 3.  Constructive Discharge Claim

Plaintiff claims that as a result of Defendant's action or inaction, she was compelled to resign.  This claim of constructive discharge fails.

"[I]ncantation of the words 'constructive discharge,' of course, is not sufficient to establish a cause of action because, absent explicit contractual provisions to the contrary, an employer may explicitly discharge any employee at will."  Trepka v. Board of

15

Educ. Of Cleveland, 28 Fed. Appx. 455 (6th Cir. 2002). "Rather, conduct that forces an employee to quit, constituting 'constructive discharge,' is actionable only if the conduct is motivated by discriminatory intent against a protected employee characteristic." Id.

In this case, the Court has found that Plaintiff cannot establish a Title VII violation, either based upon hostile work environment or disparate treatment. For this reason, Plaintiff also cannot prevail on her constructive discharge claim because she cannot show that the Defendant's conduct was motivated by a discriminatory intent.

Additionally, even if Plaintiff could establish "simple discrimination," that would not be sufficient. To support a constructive discharge claim, "there must be, in addition, aggravating factors, constituting at least a continuous and severe pattern of discriminatory treatment," id., which suggests Defendant "intended to cause Plaintiff to resign or that her resignation was a reasonably foreseeable consequence of Defendant's actions." Belt v. U.S. Dept. of Labor, 163 Fed. Appx. 382, 388-89 (6th Cir. 2006).

Here, Plaintiff has failed to show a continuous and severe pattern of discriminatory treatment by Defendant. Her own deposition testimony shows that, at most, she complained of Coburn's harassment on three occasions over a span of six weeks. The first time she complained, Defendant's response was such that Plaintiff rescinded her resignation letter which suggests it was not Defendant's intention that Plaintiff resign. After Plaintiff

16

voiced complaints about Coburn a second time, she only afforded Defendant two weeks to rectify what she perceived to be a harassing situation before quitting. Tellingly, there is no evidence which would suggest that Coburn repeatedly harassed the Plaintiff and certainly none which would suggest that Defendant was aware of continual harassment by Coburn. The most the evidence shows is that Plaintiff and Coburn had personal problems which sporadically spilled over into the workplace. When Defendant learned about the situation, it attempted to make peace between the parties. No evidence has been presented which would suggest that Defendant engaged in any action with the intent that Plaintiff resign or that it could have reasonably anticipated that Plaintiff would feel forced to resign.

Because Plaintiff cannot show she was subjected to discriminatory treatment under Title VII and because she has failed to produce any evidence which would suggest a continuous and severe pattern of discriminatory treatment by Defendant, summary judgment will be granted on Plaintiff's constructive discharge claim.

## VI. CONCLUSION

Based on the foregoing, the Order of Reference (Docket Entry No. 2) will be withdrawn, Defendant's Motion for Summary Judgment (Docket Entry No. 26) will be granted, and the case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

17